J-A14032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DEREE J. NORMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAWRENCE SILVER, AND RELIABLE | : | No. 1169 EDA 2025 |
| ROOFING LLC | : | |

Appeal from the Judgment Entered July 25, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230602897

BEFORE: DUBOW, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.: **FILED AUGUST 10, 2026**

Appellant Deree J. Norman appeals from an order entered in favor of Appellant against Appellees Lawrence Silver and Reliable Roofing, LLC, in the amount of $1,040.00. Appellant contends that the trial court erred by dismissing Appellant's motion for summary judgment and post-trial motions and committed other errors during trial. We affirm.

The trial court provided a thorough review of the facts in this matter:

The underlying dispute arose following Norman's enlisting of Appellee, Reliable Roofing, LLC, ("Reliable"). . . . , by and through contact with its principal Appellee, Lawrence Silver, . . . to repair the front porch roof area of the residential structure located at 5367 Thomas Avenue, Philadelphia, PA 19143 ("subject property") in March, April and August of 2022.

\* \* \*

Allegedly, the porch area of the subject [property] where [Appellant] has been living, fell into disrepair. The property's well-documented derelict structural conditions became the subject of

cited violations issued by the City of Philadelphia Department of Licenses & Inspections ("L&I"). The front porch and roof sections of the property w[ere] so dilapidated over an extended period that L&I declared the structure to be "unsafe" and in danger of collapsing. In due course, each notice of violation that had been issued by L&I, named the owner Bernard Shearlds as the party deemed responsible for repairs and payment of daily accruing statutory fines due to the failure of the "owner" or responsible party to remedy the violative conditions as directed. Notably, the violative conditions were not resolved by the trial date in this case.

On or about March 9, 2022, [Appellant] contacted [Appellee] Lawrence Silver via telephone to fix the front porch roof. [Appellant] described the porch damage as minimal and purposefully withheld the fact that the property was subject to long-standing L&I violations and had considerably more pre-existing damage. Due to COVID restrictions, there was no personal contact between the two men. Instead, Mr. Silver viewed the property from [aerial] photographs and provided a proposed repair estimate of $3,800.00 based upon that view and [Appellant]'s description of the conditions. [Appellant] agreed with the proposal and subsequently paid a $1,040.00 deposit on or about March 9, 2022.

Mr. Silver referred the roofing work to sub-contractors. The porch repairs were delayed over months until August 2022 partially because of the unavailability of construction materials particularly connected to the upper cornice or corbel porch pieces. In the interim, Mr. Silver ordered and paid for construction materials that the sub-contractors delivered to the subject property. He reported expenditure of delivered building materials to [Appellant that exceeded] the original deposit amount. In August 2022, when the workers arrived at the subject property well after delivering the building materials to the job site, they relayed to Mr. Silver that the porch and roof damage was far more extensive than reported by [Appellant]. As a result, Mr. Silver notified [Appellant] that the larger scoped work would cost $7,800.00 to repair. [Appellant] erupted in response with harassing phone calls and incessant written or emailed threatening demands that the work be completed for the originally stated amount.

At trial, Mr. Silver testified credibly that [Appellant] revealed that the property had been subject to L&I issued violations for the first time during these exchanges. [Appellant] incredibly countered and claims that he had notified Mr. Silver of the violations earlier

in the process. [Appellant] also complained, without evidentiary support, that he had later engaged another roofer who took his money and did not do the contracted work. As of the trial date, no repairs of the violative porch conditions were made.

On June 29, 2023, [Appellant] filed an initial complaint and notice to defend with [the trial court] naming both Lawrence Silver and Reliable . . . as [Appellees] and raising several claims including: breach of contract, extortion, unfair business practices, intentional infliction of emotional distress, unjust enrichment, [and] honest service fraud . . . . [Appellant] sought damages for the non-repair of the property's porch roof exceeding $3,262,440.00.

No personal service of the complaint was effectuated over several months. [Appellant] filed a petition to proceed *in forma pauperis* [("IFP")] by alleging that he had minimal income. This petition was granted per order entered on August 1, 2023. Thus, [Appellant] did not have to pay any filing costs for [the] repetitive pleadings and motions that followed.

On September 13, 2023, [Appellant] filed a motion for alternate service after claiming inability to serve the named [Appellees]. This was granted by order entered on September 25, 2023; according to [Appellant]'s submitted affidavit, service was effectuated via posting and certified mailing at two referenced Philadelphia and Holland [Pennsylvania] addresses.

Thereafter, [Appellant] filed repetitive motions related to allege[d] discovery violations. On or about July 1, 2024, [Appellant] filed a motion to amend the complaint. The request was granted [by the] order entered on August 4, 2024. An amended complaint was subsequently filed. The matter was transferred to the civil major jury program and multiple adjusted case management orders were entered. [Appellee] Lawrence Silver filed an answer to the complaint on November 7, 2024, asserting credible defenses.

On November 7, 2024, [Appellant] filed a motion to dismiss in response to the [Appellees'] answer. [Appellee] Lawrence Silver filed a petition to proceed [IFP]. He alleged that his income was then limited to Social Security payments. [Appellant] filed an answer in opposition to [Appellee]'s petition. [Appellee]'s petition to proceed [IFP] was granted on November 15, 2024. Over the course of the next twelve months, [Appellant] filed a series of duplicative motions related to discovery disputes to which [Appellee] responded with *pro se* answers, and counter motions.

- 3 -

Responsive pre-trial discovery-based orders were entered by other presiding jurists.

The matter was finally scheduled as a jury trial to begin with jury selection on April 9, 2026. Just before the trial, [Appellant] filed additional untimely motions that did not allow enough time for the defense to respon[d]. This court was assigned as presiding jurist to the scheduled jury trial on April 8, 2026. As the record reflects and contrary to [Appellant]'s pending averments, on the date of trial, all parties appearing *pro se*, voluntarily decided to proceed to trial without a jury with this court serving as presiding jurist and sole factfinder. The three pre-trial motions and any responses were dismissed as untimely filed.

At trial, [Appellant] essentially alleged . . . that [Appellee] Lawrence Silver owed him over $3,000,000.00 because he did not fix the property's unsafe porch. He argued that [Appellee] should compensate him as the self-perceived "equitable" owner of the subject property for all statutory fines accrued over the years related to L&I's [cited] violations stemming from the property's long-standing "unsafe" conditions and for his quite expensive resulting emotional distress . . . .

No valid theory was presented by [Appellant] that could trigger any defense liability for the long-term neglect of the property. Moreover, the testimony reflected that the [Appellant], and not the [Appellees], had been unduly enriched by the receipt of building materials on the property. [Appellee] had purchased and ensured delivery of those building materials. The reported estimated cost of the materials exceeded [Appellant's] deposit payment of $1,040.00. [Appellant]'s claims failed largely because his testimony and presentation of documentary evidence was incredible, contradictory[,] and unconvincing.

Nonetheless, this court considered the claim of breach of contract to contain one grain of viability because it was uncontested that [Appellant] had paid a deposit and that the roofing work had not been completed or addressed timely. This court equitably awarded [Appellant] the return of the $1,040.00 deposit without any reduction for expended building costs because the defense untimely presented insufficiently supporting invoices. All [of Appellant's] remaining [] claims were denied as meritless.

Moreover, the record reflected that [Appellant] had abused the civil process in this case to an extreme degree as a weapon to extort money from a truly indigent party. Also, it became easily

- 4 -

apparent that [Appellant] was not truthful regarding his asserted economic hardships to support his earlier petition to *proceed* [IFP]. Thus, this court rescinded the prior grant of his [IFP] filing status.

\* \* \*

In the instant matter, [Appellant] filed two sets of post-verdict motions on April 18, 2024. The post-verdict motions essentially alleged that the trial court should have considered his untimely filed pre-trial motions, and that the evidence was contrary to the final verdict. Notably, [Appellant] repeatedly sen[t] copies of his filings to a defunct address for the [Appellees] in Bucks County. On April 22, 2025, this court entered the order denying [Appellant]'s post-verdict motions.

**See** Trial Ct. Op., 6/23/25 at 1-7 (footnotes omitted and some formatting altered).

Appellant filed a timely notice of appeal and both Appellant and the trial court complied with Pa.R.A.P. 1925.[1]

---

[1] Appellant served a notice of appeal on the trial court but did not serve the notice of appeal on Appellees. In the trial court opinion, the trial court notes that Appellant filed a praecipe to enter judgment, that the praecipe was promptly returned by the U.S. postal service as unclaimed because Appellee moved years prior to the mailing. Rule 906(a) of the Rules of Appellate Procedure requires that the appellant serve its notice of appeal on "[a]ll parties to the matter in the trial court." Pa. R.A.P. 906(a)(1). Failure to comply with these requirements is not, however, a fatal defect that requires dismissal of an appeal. Pa. R.A.P. 902 ("[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but it is subject to such action as the appellate court deems appropriate"); **see also Meadows v. Goodman**, 993 A.2d 912, 914 (Pa. Super. 2010). Despite Appellant's failure to properly serve Appellees with notice of this appeal, we find that it is not a fatal defect because Appellee was not adversely affected by allowing this appeal to proceed. Therefore, dismissal of this appeal is not warranted.

On appeal, Appellant presents the following issues, which we have reordered as follows:

1. Whether the [trial court] committed an error of law, and an abuse of judicial discretion by failing to acknowledge, and comprehend that [Appellee] Reliable . . . was non-responsive and unrepresented thereby dismissing [Appellant]'s motion for summary judgment in error?

2. Whether Judge Anne Marie B. Coyle [Judge Coyle] committed an error of law and or an abuse of judicial discretion by violating [Appellant]'s Article I, Section 6 protected right to *voir dire*?

3. Whether [Judge] Coyle committed an error of law, and or an abuse of judicial discretion by failing to adhere to the rules of evidence?

4. Whether Judge [] Coyle committed libel against [Appellant]?

5. Whether Judge [] Coyle committed an error of law, an abuse of judicial discretion by unlawfully dismissing [Appellant]'s post-trial motions thus imposing an undue burden greater than a preponderance upon [Appellant]?

6. Whether Judge [] Coyle committed an error of law and or an abuse of judicial discretion by failing to acknowledge and comprehend the governing laws, facts and evidence of [Appellant]'s ownership of the subject property?

7. Whether Judge [] Coyle exhibited, exercised and engaged in bias while presiding over a civil matter in a court of law?

*See* Appellant's Brief at 5 (some formatting altered).[2]

_____

[2] With regard to the first five claims set forth herein, although Appellant included these claims in his Rule 1925(b) statement, he failed to raise them in his post-trial motion. **Compare** Appellant's Rule 1925(b) Statement at 6-11 (unpaginated); **with** Appellant's Post-Trial Mot., 4/18/25 at 2-3 (unpaginated). We accordingly find that Appellant failed to preserve these claims for appellate review and they are, therefore, waived. **See** Pa.R.C.P. 227.1 (requiring "parties to file post-trial motions in order to preserve issues
*(Footnote Continued Next Page)*

In support of his first claim preserved for appellate review, Appellant argues that the trial court erred by claiming Appellant's name should be on the deed to establish ownership over the property. *Id.* at 16. Additionally, Appellant states that the trial court erred by misunderstanding the concepts of "equitable ownership" and "legal ownership." *Id.* Appellant contends that the trial court did not acknowledge the Philadelphia Maintenance Code definition, review Appellant's Owner Occupied Payment Agreement, and review the City Council of Philadelphia's special findings when deciding the issue of ownership. *Id.*

In addressing a trial court's ruling on a post-trial motion,

> [o]ur review is limited to determining whether the trial court abused its discretion or committed an error of law. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. If the alleged mistake concerned an error of law, we will scrutinize for legal error. On questions of law,

---

for appeal," and "[i]f an issue has not been raised in a post-trial motion, it is waived for appeal purposes"); *see also Board of Supervisors of Willistown Twp. v. Main Line Gardens, Inc.*, 155 A.3d 39, 44 (Pa. 2017). We note that *pro se* status does not relieve an appellant of their duty to comply with the Rules of Appellate Procedure. *See Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 213 n.11 (Pa. Super. 2008). "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." *In re Ullman*, 995 A.2d 1207, 1211-12 (citations omitted), *overruled on other grounds by In re Ajaj*, 288 A.3d 94, 109 (Pa. 2023). Further, "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." *U.S. Bank, N.A. v. Pautenis*, 118 A.3d 386, 394 (Pa. Super. 2015) (citations omitted).

our standard of review is *de novo* and our scope of review is plenary.

**Spencer v. Johnson**, 249 A.3d 529, 549 (Pa. Super. 2021) (citations omitted).

We have previously held that the "burden of proof is on anyone who claims property in the possession of another to establish facts essential to the validity of his claim of ownership." **See In re Estate of Clapper**, No. 1081 WDA 2024, 2025 WL 637060, at *8 (Pa. Super. filed Feb 25, 2025) (unpublished mem.)[3]; **see also In re Estate of Matson**, 542 A.2d 147, 149 (Pa. Super. 1988) (stating that petitioner "had the burden of establishing her title to any items of which she claimed ownership"). Additionally, "a claim against a decedent's estate can be established and proved only by evidence which is clear, direct, precise and convincing." **Estate of Allen**, 412 A.2d 833, 836 (Pa. 1980).

Regarding the ownership of property claim, the trial court explained:

[Appellant] claims to be the owner of the subject property. [Appellant]'s claim of ownership, however, was predominantly debunked by his conflicting trial testimony. As described, [Appellant]'s connection to the subject property appears to be that he has lived there following the death of his non-biological stepfather and legitimate recorded owner of the subject property, Bernard Shearlds. Bernard Shearlds reportedly died intestate on January 1, 2015. Contrary to [Appellant]'s earlier rendition of events, Bernard Shearlds had at least two biological children as the product of his union or marriage to [Appellant]'s biological mother, Lydia F. Shearlds. [Appellant]'s mother, Lydia F. Shearlds, is also apparently deceased as of April 4, 2015.

_____

[3] We may cite to unpublished memorandum decisions of the Superior Court filed after May 1, 2019, for their persuasive value. **See** Pa.R.A.P. 126(b).

[Appellant] claims to be the administrator of the estate of one or both decedents.

According to the City of Philadelphia public posting, the subject property, which is assigned to Office of Property Administration under No. 511088400, is still singularly owned by Bernard P. Shearlds as a live person. The prior sale date of purchase by Bernard Shearlds for $1 was recorded on June 22, 1997. The City's data reflects the 2025/2026 assessed value of this two-story row home residence with roof front porch to be $141,000.00. Appellant [] is not listed as [an] owner or as someone having a legal interest in the subject property. Thus, [Appellant] had altered his position and proffered his belief that he is the "equitable" owner of the subject property.

* * *

In short, Appellant presented no legitimate theories of liability or evidence to support his basic contention that Lawrence Silver, or Reliable, should be deemed liable for municipal costs and statutory fines that may be imposed in the future. Legally, neither [of the Appellees] was responsible . . . to resolve the structural violations and unsafe porch related conditions of the property located at 5367 Thomas Avenue, Philadelphia, PA 19143.

First, by his own admission, Appellant does not and did not own the subject property. The natural responsibilities that flow from home ownership did not apply to him. Second, while he may be both ethically charged in his role of administrator of his mother's estate to be the person responsible for neglect of maintenance of the property, he did not present any testimony or evidence to suggest that he had been charged by the municipality for the property's violative conditions. Thus, according to the testimony presented, [Appellant]'s standing to debate transfer of liabilities stemming from L&I violations lacks any foundation.

Trial Ct. Op., 6/23/25, at 2, 10 (footnotes omitted).

Following our review of the record, we discern no abuse of discretion by the trial court. *Spencer*, 249 A.3d at 549 (Pa. Super. 2021); *See In re Estate of Clapper*, 2025 WL 637060 at *8. Appellant argues that he has equitable ownership over the property due to a 2005 purchase agreement,

and letters of administration for the estates of Bernard P. Shearlds and Lydia F. Shearlds. Appellant's Brief at 17. Additionally, Appellant claims that he owns the property due to "[t]he owner-occupied payment arrangement" with the City of Philadelphia. N.T., 4/9/25 at 20. During the trial, Appellant also revealed that he has not transferred the property's deed into his name. *Id.*

As stated above, it is Appellant's burden to establish ownership over the subject property. *See In re Estate of Clapper*, 2025 WL 637060 at *8. Appellant has failed to provide the trial court and this Court with "clear, direct, precise and convincing" evidence supporting his claims. *See Estate of Allen*, 412 A.2d at 836. The strongest evidence Appellant provides is in a post-trial motion where he attaches property tax records billed in his name. *See* Post-Trial Motion, Exs. 1-2. However, "[a]ssessment and payment of taxes do not prove title . . ." *Starling v. Lake Meade Property Owners Ass'n, Inc.*, 162 A.3d 327, 335, n.13 (Pa. 2017) (*quoting James v. Bream*, 106 A. 722, 723 (Pa. 1919)). Additionally, Appellant did not provide the purchase agreement or the letters of administration for the estates of his mother or stepfather in his complaint, and it does not appear in the record. Furthermore, during the trial, Appellant did not submit any evidence, besides his own testimony, establishing his legal or equitable ownership of the property. For these reasons, we hold that the trial court did not abuse its discretion by finding that Appellant is not the owner of the subject property. *See In re Estate of Clapper*, 2025 WL 637060, at *8.

In support of his second claim preserved for appellate review, Appellant argues that the trial court engaged in bias while presiding over the case. ***See*** Appellant's Brief at 23. Appellant contends that the trial court engaged in bias through its "deliberate misrepresentation of [Appellant]'s compliance with the Rules of Law, the Rules of the Court, and the proper procedures." ***Id.*** at 23. Appellant also lists seven instances where he believes the trial court engaged in bias by giving Appellee additional time to amend his responses. ***Id.*** at 23–25*.*

A claim of judicial prejudice or bias may not be raised for the first time in post-trial proceedings. ***See Reilly by Reilly v. Southeastern Pa. Transp. Authority***, 489 A.2d 1291, 1299-1300 (Pa. 1985), ***overruled on other grounds by Drake v. Pa. Nat. Mut. Cas. Ins. Co.***, 601 A.2d 797 (Pa. 1992); (stating that "the proper practice on a plea of prejudice is to address an application by petition to the judge before whom the proceedings are being tried" so that the trial judge "may determine the question in the first instance"); ***see also Ware v. U.S. Fidelity & Guar. Co.***, 577 A.2d 902, 905 (Pa. Super. 1990) (stating a "party may not raise the issue of judicial prejudice or bias for the first time in post[-]trial proceedings"). As our Supreme Court has explained, "[w]here the asserted impediment is known to the party, and that party fails to promptly direct the attention of the jurist to that fact, the objection is waived and the party may not subsequently offer the objection as a basis for invalidating the judgment." ***See Goodheart v. Casey,*** 565 A.2d 757, 763 (Pa. 1989) (citations omitted).

Regarding the claim of bias against Appellant, the trial court explained:

Here, at no point prior to trial did Appellant properly raise any issue of judicial bias or prejudice or file a petition for recusal. To date, Appellant has cited nothing in the record that would reasonably indicate this jurist's undue bias or prejudice other than the fact that his case did not end in his favor. Rather, this transcribed record reflects [the] extreme patience of this jurist and painstaking effort to derive the truth of what had occurred.

Trial Ct. Op., 6/23/25, at 13.

Following our review of the record, we discern no abuse of discretion by the trial court. *See Johnson*, 249 A.3d at 549. Similar to the appellant in *Ware*, here, Appellant raised the issue of judicial bias for the time in his post-trial motion. *See Ware*, 577 A.2d at 905; *see also* Trial Ct. Op., 6/23/25, at 12-13; Appellant's Brief at 23; Appellant's Post-Trial Motion at 3 (unpaginated). For this reason, we find that Appellant's judicial bias claims are waived. *See Ware*, 577 A.2d at 905. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/10/2026